The next case today is Case No. 23-1188, Sean Burt, et al. v. Board of Trustees of the University of RI, and 23-1192, Logan Thompson, et al. v. Board of Trustees of the University of RI. Would Attorney Doolittle please step up to the podium and present your argument? May it please the Court. My name is Paul Doolittle, and I am here on behalf of Mr. Burt and Mr. Thompson, who are the appellants in this case against the University of RI. May I please reserve two minutes for rebuttal, sir? Yes, you may. Thank you. Your Honors, this case is about the University of Rhode Island students who signed up for in-person, on-campus education and experience, and received just that up until March of 2020 during that March semester. At that point, the University of Rhode Island moved all classes to online remote experience due to the COVID-19 pandemic, and required all students who were able to leave campus to vacate. Based on URI's prior conduct of providing students with in-person education and access to campus facilities and services, combined with the statements, published materials by the University of Rhode Island, and confirmed the same bargain offered during the spring of 2020 semester, in fact, the University of Rhode Island has never had anything other than in-person classes. They have a few classes that they offer you can complete your graduate degree program online, but they do not have a course that allows you to start and finish online. It never has. And until recently, the only way to get a degree from the University of Rhode Island was to attend in person. Counsel, I take it you seem to be starting with your tuition-based claims, which were decided by the district court on our Rule 12-B-6 motion to dismiss. Yes, Your Honor. Okay. You certainly haven't pointed us to an express contract for in-person education. You have made out, let's assume at least for purposes of argument, that you've made out a claim for an implied contract, right? Yes, sir. But you never carried that through the next step. If you have an implied contract, there's no claim made for restitution. So your only damages would be in terms of unjust enrichment. You did plead unjust enrichment. I mean, URI has a defense here of the impossibility of substantial frustration of performance, all right? So you may be entitled to some remedy. You might ordinarily be entitled to, as I see it, to recover for unjust enrichment. But in your brief, you've expressly waived the unjust enrichment claim insofar as it pertains to tuition. So there's no recoverable damages, therefore no enforceable contract, even if we apply one. Your Honor, under the implied contract, as Your Honor stated it, the implied contract in this case has been breached. The implied contract would be the contract. But what evidence is there of damages if you waived unjust enrichment and made no claim for restitution? Where is the damages claim? That's what I'm struggling to see because it seems to me the ancient Latin legal motto, no harm, no foul, seems to apply here. If you can't point to anything in the record that would allow you to recover damages. And the only thing I could see was unjust enrichment, which, as I say, has been expressly waived. Your Honor, under the breach of implied contract, here we have the damages are that the students contracted under the express and implied contracts, they contracted for in-person education, not an online experience. What they were, in fact, given was a combination between the two. And they were given the in-person education up until March, and then with COVID-19, they were given the online education. If all of that is true, that shows the breach. But where's the damages? When you say the value of the breach, the legal theory for that would be either restitution, never pleaded, never claimed, or unfair, unfair, not unfair, unjust enrichment, waived. So how do we calculate damages in view of the fact that neither of those theories are in play? Your Honor, first of all, I believe that the prayer for relief in the complaint includes such further and further relief as this honorable court may deem just and proper, as most all complaints do. And I think that allows this court to award the damages for that. And suppose we deem just and proper only the relief that you've asked for and haven't waived. Then I think that the unjust enrichment would be in play, Judge, and I think you would have the damages. What do we do with the waiver? We didn't write your brief. You wrote it. There it is in black and white, waiver of the claims for unjust enrichment insofar as they deal with tuition. You brief quite well an unjust enrichment claim as to fees. You waive it as to tuition. That's what I'm struggling with. I understand the defendant is positive of that, Your Honor. And I respectfully disagree that we have waived that argument. I believe the briefs are taken together. And when you read them in compliance with all of the briefs that were submitted in this case, I think we are clearly still alleging unjust enrichment as to claims for not only fees, but also for the tuition difference between the in-person and online version of it called courses taught, which the tuition covers. Counsel, let me just clarify. The claim that all your claims are based on just the spring semester for 2020, correct? Spring semester of 2020. That's correct, Your Honor. No further semesters. Just that. Just that semester only. My question, because basically I'm looking at the pleadings. Basically the school was closed, I would say it's like March 12th or 15th, right? Correct, Your Honor. And if the students stayed like the regular academic year, they would usually finish like a month later, like mid-April, a little bit towards the end of April usually. I believe it's towards the beginning of May or first part of May, but late, late April. So let's assume they were there for six weeks, four weeks, and then the second six weeks were? It's approximately 50% of the time. Just for round numbers, it's approximately 50% of the semester was in-person, and then 50% of that semester was online and remote. That answers your question. Okay. And let me ask you, because I know you or I offered 25%. There was a refund that was offered to the students, correct? I'm not sure about the amount of the refund, Judge. It was 25%. It was for housing and meal plans. Yes, sir. I apologize. I thought you were talking about for tuition. For tuition, there was no refund. No refund for tuition, Judge. Just to be really clear, yes. For housing and fees, yes, they did offer a percentage refund for that, which we think is also illustrated about what the refund should have been for the tuition portion as well as the fees portion. I mean, I don't think you can draw a distinction between one or the other. Well, sure you can draw a distinction because they offered no substitute for the housing, but your clients chose to enroll in online education as a substitute for in-person education, online education, which gave them credits toward their degree. So it's certainly not comparable to housing where nothing, or meals, where nothing was offered in exchange. Respectfully, Your Honor, my clients did not choose the online at all. That was the only offer they had with regards to the breach of contract. Do you have any client who had a gun held to his head and was required to enroll online? No, sir, Your Honor. They accepted the offer. So my point is that they have already received something in respect to education, something of value that they did not receive, whereas they received nothing in respect to housing and meals. And you say that one is a proxy for the other, and I'm pointing out that that's really a comparison of plums to pomegranates. I follow your logic, Judge, and I understand exactly what you're saying. What I would say is that, yes, when you change the modality, when you change and you go to online, that there is some refund due to those students who signed up expecting an in-person,  that using that 25 percent benchmark from the housing and room and board, basically, using that as a benchmark is not appropriate. You're correct in that regard. I think there's still an amount of refund that's due, which is a question, I believe, for a jury. And I believe that what we have here is a case with an implied contract, and we have it, and it's very clear, and we also have it. Let me ask you, if you're talking about an implied contract, were any of the students allowed to, for example, say, well, if you don't want to continue online, you have 10 days, let us know, and that was never part of anything. Absolutely not, Your Honor. And, in fact, URI's refund policy has been briefed, and as I'm sure Your Honors have read, the refund policy is limited to when a student withdraws or leaves the school, and it's early on in the semester. That wasn't available during this COVID-19. Let me ask a follow-up question. Did any of the students during the March, let's say March 15th or May 15th period, object or write letters to say, I want my tuition back because this contract has been frustrated or, you know, there's an implied condition or whatever? Did that happen, or basically these students are suing after that semester was over? Judge, I don't know if there's any. I'm not sure of exactly what's in the record in that regard, but I can guarantee you there's been plenty of letters that were written during the discovery process. There's been a lot of correspondence. Letters during the semester. During the semester, after the closure, saying, we need our money back. Yes, this is not fair. We don't want this. This is wrong. This is not what I paid for. I didn't pay to sit at my kitchen table in my parents' house on my laptop. I paid to go experience what Rhode Island advertised in their materials, an education by the sea, and a chance to interact with my fellow peers, with my fellow students, with my professors, a chance to visit their offices, a chance to get to know and to experience the campus life. That's what the university's been about. That's why it was formed. That's why it's been in existence from the beginning. In other words, the argument is you go to college not to get a degree, but to get an overall education more than the degree. Absolutely, Judge. This is not a tech school. This is not a trade school. We're not teaching them how to build a house or how to lay bricks. This is an educational experience that we hope will broaden them to do just about anything in life. That's what, in fact, the marketing materials that Rhode Island uses, the University of Rhode Island uses, to convey to the students exactly what the experience you're going to get when you step foot on campus. You're going to see these people. You're going to interact with these things. You're going to have the choices of going to all of these different types of classes within the schools, within the universities. You can choose to participate in extracurricular activities, or you can choose not to. You can choose to spend your time in the library, or you can choose to spend your time in the student center. The thing being is the choice is yours, and these options are available, and that's in the marketing materials. That's what they publicize. That's what their websites show. That's what they are, in fact, marketing when they go around to the schools and try to recruit high school students to come to the University of Rhode Island to experience that broad-based education, to experience the in-person experience, to be on campus and to interact with those students. What if the school had come up with, this is hypothetical, with a policy sort of saying, of course you missed this semester, that semester, or you're taking it online, but we're giving you an opportunity to come for an extra semester, tuition free, you know, whatever, and live that college experience. Still wouldn't have resolved the problem? I think that would have been a very reasonable resolution. I'm thinking just like what the NCAA did for college sports. You got a fifth year of eligibility because you missed one year. Exactly. And get your master's degree and continue going to school. Exactly. I think they could have allowed them to pause right there and pick back up again. I think they could have done exactly like Your Honor suggests, offer them a free semester at the end. In fact, some of the cases that have been resolved have done exactly that, under the same type of theories that we have here. They had a lot of choices judged. They could have shut down the school completely and just said, we're going to take a pause, just like a lot of other businesses were forced to do. They could have paused. And there was nothing wrong with that. And then the students would have picked back up when the regulations lifted and they're allowed to continue the classes. They had a lot of choices. The choice they made here was to change the modality, to try to do what they did in person or online. And I understand and appreciate that greatly. But in all due respect, that's not what the students asked. Let me also ask. Is your complaint overall for everybody or it's just for a limited number of students who decided we didn't like that method? Because there are other students who say, I'm going to graduate. I want to finish school. It's like, I'd rather finish right now or get my, you know, there may be two trains of thought. So who does your complaint cover exactly? I follow your earlier question, Judge. At the pleading stage of where we are in this complaint, the class has not been certified yet. And so the class definition is broad enough that would encompass everybody, as you say, some people that preferred the online or did not mind or it was okay with them. And the class definition at this point would include those people, as the class definition stands, at this pleading stage. So in theory of this case, where we go back, it could be narrowed or, you know. Absolutely. During the class motion and the following our class certification papers, we could narrow that class to include just those. But I do believe the pleadings, to be fair, I do believe the complaint in this case would cover every student as your question asked, Judge. Counsel, your time is almost up. You haven't said a word yet about the fees claims which were resolved on summary judgment. Your Honor, I think the fees claims in this case, respectfully, I think the lower court engaged in fact-finding. What they decided was that there are similar services. So with regards to the student activity fee, the lower court found that because the school provided speakers who appeared via Zoom, that that's the same thing as speakers who would have appeared in person on the campus. Or a magician, for example. Or a magician that would have appeared. I don't know if it was you or I or the other school. I read that there. Exactly. Any type of former. But the explanation for the fees given, I mean, we've got to look at this from what the university's reasonable expectations would have been. And we have to look to the catalog and associated materials for the definition. With respect to these fees, I think they, without exception, use language like the fee payments cover the cost of or support various activities. Indeed, some of the fees are very nebulous in the sense of a portion. There are fees assessed for capital projects, whatever those may happen to be from time to time. I'm struggling with the notion of why the district court's conclusion that those fees on a summary judgment record presented no issue of genuine fact as to the existence of a contract or a commitment. I share your trouble, Judge. I'm troubled with your attack on the district court's resolution of those claims. Because having read the catalog excerpts, the district court's opinion of the parties' briefs, I'm left to wonder what you think was wrong with the district court's analysis. I'll go straight to the transportation fee, Judge, which I think is the one that stands out the most to me. The transportation fee was said to support the buses that shuttled the students back and forth. What the lower court said was because they canceled the services completely, that's very much akin to if one of the buses breaks down and so they didn't pick up this particular stop. That's a fact-finding mission that the court has engaged in and decided on its own that a cancellation is the same. But, counsel, we're on de novo review, all right? We're not going to engage in fact-finding. The fact of the matter is the commitment that the university made was you pay this fee to support our internal transportation system. And despite the fact that the system was largely inoperable because of the pandemic, there's no question that expenses continue to accrue. And there's no indication in any of your filings that that money was used for some purpose other than to support the transportation enterprise on the campus. So why are your clients entitled to refunds? Respectfully, Judge, there is nothing in the record that shows that those transportation fees did go to support those buses. That's your burden to show that they were misused. You haven't shown that they weren't used for that purpose. They were given to support it. There's nothing in the record that shows that they weren't used to support it. They were given those fees to use the bus service, Judge, and the bus service was stopped. No, it doesn't say that in the catalog. It does say it. It doesn't say that in the catalog. It doesn't say that in any of the... The university was careful, I think, in its wording and without any exception used either the phrase, the word supports or the phrase covers the cost of to describe the purpose of the assessment of each and all of these. I think there are five fees that you've challenged. And I'm struggling. I'm really struggling with your argument. I'm not unsympathetic to your client's position because the pandemic caused awful dislocations to many enterprises, and higher education certainly wasn't spared, right? And I certainly feel bad for students who were caught. Not only college students, graduate students, high school students, a lot of people suffered. But you've got to make out a case on the record. And if you could point me to something in the record that showed that URI breached its promise, that it did not use those funds to support its transportation enterprise, or that it promised the students something more than that the funds would be used to support that enterprise, I'd be much more comfortable with your position. I understand your position, Judge. We believe that the burden then shifts to them to show that they did in fact, we allege that they did not use those fees to support these buses and to support the system, and in fact canceled those things. Where would I find that allegation? That would be in the briefs of the appellants, Judge. No, it's not in the complaint. Briefs of the appellants and the reply, and I believe it's in the complaint, but I could be mistaken in that regard. I don't have that in front of me. In sum, Judge, what I would say is that the university was in the best position to avoid where we are today. The university could have easily drafted a force majeure clause, easily spelled out in the event of a pandemic. This is what happens. You don't get any fees back. You don't get any tuition back. They were the person in charge of the contract. They were the ones that had that choice. They didn't do that here. And therefore, I think that the district court erred in this case. Thank you. Thank you. Attorney Sullivan, please state your name for the record and proceed with argument. Good morning, Your Honors, and may it please the Court. Kathleen Sullivan for the University of Rhode Island. I'd like to begin with the tuition claims and to say why there are two paths to affirming the district court's dismissal of those claims at the pleading stage. Now, I'm aware that other circuits have reversed dismissals in other COVID university contract claim cases, and I want to say why our case is quite different in two respects. The first is that what applies here is Rhode Island law, as interpreted by this Court in the important prior decisions like Mangler v. Brown or this Court's decision in Havlick v. Johnson & Wales University. And under that reasonable expectations test, so important in this circuit where colleges and universities and institutions of higher education, like Rhode Island's flagship state school, the University of Rhode Island, play such an important role, reasonable expectations is under Rhode Island law an objective test that can be decided as a matter of law. And the district court correctly decided that as a matter of law here. And I'd like to call the Court's attention especially to pages 11 through 13 of the addendum, where the district court dismissed the contract tuition claims on the grounds that there was no reasonable expectation of a money-back guarantee of in-person education in all circumstances, no matter what. To put it another way, what the district court said, citing Havlick in addendum 13 footnote 9, is that reasonable expectations have to be viewed from the university's perspective and from the university's perspective a university must be free, even if there's an implied contract to deliver in-person education in the ordinary course. And let me drop a lot of arguments here, Your Honors, and just say if we assume the implied contract opposing counsel has described, it is an implied contract for a presumption of in-class education, but not when exogenous circumstances beyond the university's control require some kind of administrative decision to use a substitute. As Judge Selya says, there was a substitute. They didn't not get their education. Plaintiffs Burt and Thompson got all the credits they bargained for. They just got them through an academic substitute online. Let me suggest a slightly different way of looking at it so you can address that. Very few contracts, only more sophisticated ones, have force majeure clauses in them. But the common law operates on, in effect reads into most contracts, a form of force majeure in that if you and I have an agreement and then something happens that you had no responsibility for, the state issues an order that precludes you from performing, then that doesn't mean that we didn't have a contract. We do have a contract. I was supposed to pay you money. You were supposed to perform. But your failure to perform would not be a breach. You would be relieved from the obligation to perform. And that's how I would see the contract issue going. And equity then steps in at that point, and equity then addresses the question, well, okay, you're excused from performing, but do you have to give me back some of my tuition? And we would ask whether it's just and equitable, whether for you to keep the whole tuition, maybe your expenses went up because of the state provision, or maybe the value I got was actually pretty good. And it seems that the court never got to that second one. It actually said there's no agreement, which seems to me to be contrary to the reasonable expectations of virtually every student in this country who's gone to a residential college. Yes, Your Honor. Let me take it in two steps. Let's start with the contract tuition claim and why the judge was correct that there was no agreement to a money-back guarantee of in-person education in all circumstances. Right, but I'm not saying there's money-back guarantee. Most contracts don't have that. I'm just saying here's a simple contract. I will give you tuition, and you will let me come on campus and get the traditional campus experience of education at URI. That's our agreement, period. Subject to the reasonable expectation that if there's a circumstance beyond the university's control. Every contract is subject to that. Absolutely, Your Honor. And that's why reasonable expectations here precludes a finding that there was a properly alleged breach of reasonable expectations. In other words, the reasonable expectations come with the caveat Your Honor describes. But that wouldn't be the reason. The way you're presenting it, it would be, okay, here's the deal. You give me $50,000, and I will give you a campus education unless I can't. But what about the $50,000? I keep that, too. Very nice. Thank you. Your Honor, let's talk about reasonableness in the way that this court talked about it 40 years ago in the Cuez-Nongle case, which said that when the Universidad Central de Bayamón went on strike for nine days and the students lost their classes, that wasn't a breach of contract that required a partial tuition repayment. And what this court said in Cuez-Nongle was, even to think that a university could be found to have broken its contract when it changed the dates of classes or the curriculum for reasons beyond its control or changed teachers should startle anyone at all familiar with university life. So, Your Honor, what I'm saying here is the reasonable expectations test that this court applies following Rhode Island law set forth by this court in Havlick and Mangla. That says it's got to be a reasonable deviation from the presumption of in-person classes. Strike on campus? Reasonable. Hurricane Katrina? Refer, Your Honors, respectfully to the Roe v. Loyola of New Orleans case. Hurricane Katrina meant Loyola of New Orleans had to shut down. Campus was flooded. It was uninhabitable. So Loyola sent their students, at their expense, to go finish their law school semesters at Houston and other schools. Did they get a partial tuition payment because they expected, in the normal course, to finish their education at Loyola? No. And similarly, if a train derailed near campus and emitted toxic gas and campus had to be closed and you had to go online for the duration of the gas leak, would there be a requirement of a partial tuition refund? No. Why not? There wouldn't be as an obligation a contract, a duty to perform. I will rent your house for a week for my family vacation, and here's $1,000, and I give it to you now. Then before I show up, lightning strikes your house, burns it to the ground. I would say you're excused from performing that contract, even if your contract had in it no money back or didn't have no money back guarantee. But then we would turn the conversation in equity to, well, what about the $1,000 I gave you? And I don't think you would necessarily get to keep it. We would need to determine whether that's just. So, Your Honor, let me turn right to my second path to affirmance because it gets us out of comparing this case to any of the other circuit cases. Before you do that, let me just ask you a question because you were talking about reasonable expectation of the parties. You were talking about the other cases. But then at some point in the interchange of questions, we're dealing with Rhode Island law. So an analogy to Louisiana law, for example, I assume you have Loyola, New Orleans. Don't we specifically have to look at Rhode Island law, and particularly we have to look, this is an unprecedented situation. What's the reasonable expectation of the parties during a COVID pandemic? Absolutely, Your Honor. And I think that the judge got it exactly right below in saying the reasonable expectations of the party were that where there's an unforeseeable pandemic that in the early days was presumed to be lethal and made going to class impossible, it was within the reasonable expectations of students that their contract would be fulfilled by the university making an academically appropriate form of substitute education. Now, Your Honor, I would be the first to admit that if the university woke up one day and it said, you thought you were going to class in person at URI, but we changed our minds. We want to save money. We want to beat the budget deficits. We'll just go online. That would not be a defensible action. The students could plead that it was within their reasonable expectations that the university not change in-person classes based on a convenience or economic rationale. But let me get to Judge Keada's, he got me to lightning, and that gets me to the second way this court can affirm the court, and that's impossibility. Now, impossibility, let's remind us, and I would like to commend the court's attention to addendum pages 41 to 47, because that's where the district court gets to an issue that I think resolves every claim in this case and justifies affirmance on every claim in this case, and that is this is the first case in the procedural posture of summary judgment to reach a circuit court. The second, third, fifth, seventh, and D.C. circuits all decided on motions at the pleading stage, and, in fact, the second and third and fifth circuits all said when it gets to later in the case, the universities may have a profound impossibility defense, lightning. And we do here, and it was resolved at summary judgment. And the impossibility of having in-person classes or in-person activities under Governor Raimundo's order, Governor and now Secretary Raimundo's orders, Order 2014 said you may not travel from home except for medical needs or necessities of life and banned public gatherings of more than five people. Well, that's why you likely win the contract claim, because impossibility forgave performance. But with then still left with you've got my $50,000 and I want some of it back, and you say you're keeping it all, and I say, well, let's see what's just. Exactly right, Your Honor. I believe that impossibility is a complete defense as found at summary judgment at Addendum 41 to 47 on fees, but it applies equally to tuition. It was just as impossible to go to history class or math class as to go to a live student concert or to a meeting of student clubs. And the other side, frankly, I haven't heard opposing counsel today even mention impossibility, and it's certainly in their briefs, they do not suggest for a moment that it was not impossible to perform the contract. Suppose this was in 1950, so there are no computers, no virtual option whatsoever. It's either on campus or it's not. And then you have the same facts with the COVID. It would be impossible for you to provide any education. Well, Your Honor, I would say that's different because where I'm getting impossibility from is an exogenous circumstance beyond the defendant's control. Right, and I'm saying COVID was it in 1950. Absolutely, Your Honor. So, but, you know, the failure to, yes, I think that under those circumstances we'd have a different question about what a reasonable substitute was. Wouldn't you have to give back the tuition? I'm sorry, Your Honor? Wouldn't, under my scenario, 1950, COVID, shut down the campus, no way to provide education otherwise, so no education, but it was impossible for you to provide anything. Wouldn't you have to give back some of the tuition? Your Honor, if the university had been unjustly enriched, then in your hypo it might well have been. Right, but we need to have fact-finding. Because it got to keep money for doing nothing. But this case is different, and this is where it's crucial here, Your Honor. I want to focus on the sui generis procedural posture of this case. Summary judgment. This court, sorry, the district court in this case, had a copious record at summary judgment showing no unjust enrichment. And here, Your Honor, it's crucial to look at the analysis in addendum 41 to 47, but that was supported by discovery and fact findings. And the district court said the university was not enriched. And I'd like to point, if you look at nothing else in the record, Your Honors, I would point you to supplemental appendix page 577, supplemental appendix 577, where in the 30B6 deposition that my colleague on the other side took of Abigail Ryder, the vice president for administration and finance, testified without dispute, unrebutted, that URI, quote, did get additional federal aid, but overall we spent about $16 million more than we received in COVID relief funding. In other words, far from being unjustly enriched by the transition to online education and virtual magic shows, the university lost money that was unrecoverable, unreimbursable, out of its coffer, and that's even before we get to the lost money from the 25% of the housing fees that were refunded, as Judge Halpe referred to. It lost money. It was not unjustly enriched. And, Judge Cayatta, the key to the unjust enrichment question is, was the defendant unjustly enriched, such as having to disgorge a profit, an unjust profit? The question is not, did the defendants get something of lesser value? That's the compensatory damages question, and that was properly dismissed for reasons of impossibility. And, Judge Selye, you're exactly right that the plaintiffs have waived their unjust tuition claim, their unjust enrichment claim as to tuition. The plaintiffs waived their unjust enrichment claim as to tuition by not raising it in the blue brief. We pointed this out on page 39 of the red brief, and they were silent in the reply brief. So unjust enrichment is waived for tuition now and forever. But it's still in play for fees. Correct, Your Honor. But there, we think you, as a matter of law, there's no unjust enrichment because there's nothing unjust. And there's two reasons, Your Honor. Judge Selye, you pointed to all the substitute services the university provided. It wasn't like in your hypo, Judge Cayatta, the university provided nothing. It provided substitute services that, by the way, both Plaintiffs Burt and Thompson accepted. Burt has graduated with his degree, not putting an asterisk next to it that it was worth anything less than any other URI degree. And Plaintiff Thompson is on course, made progress toward his degree. They accepted that damage. They didn't rescind. They shouldn't get double payment from getting their degree and their progress to their credits and money back. But the crucial thing is you view unjust enrichment. The plaintiffs didn't plead some, you know, alternative damages. In other words, what you're saying is that the school, taking every possible action under the circumstances, in fact, helped them in the way that was available. And, again, one had graduated. The other's en route to graduate. It's not that they were prejudiced. You know, they were prejudiced in the sense that they weren't there physically that full semester. But they were able to move past that semester to the next semester, the next semester, and eventually, I assume, maybe go there in person. That's exactly right, Your Honor. So this is not a case in which they tried to rescind, and then they would have gotten rescissory damages. This is a case where they accepted the benefit of the bargain. And the only question is whether we were unjustly enriched. Now, the complaint pleads unjust enrichment as to tuition and fees. But plaintiffs waived their appeal from the dismissal of the tuition unjust enrichment fees. Their summary of arguments starts out, the district court erred in granting defendant's motion to dismiss as to plaintiff's breach of contract for tuition claim and unjust enrichment as to tuition. Your Honor, they made no argument about why it was improperly dismissed. And a conclusory statement is not enough for a statement. We pointed this out on page 39 of the brief, and there's nothing in the reply. But I do want to focus on impossibility because it is a way for this court to provide a very important new ruling that will come to the aid of the universities of this nation, and certainly in this circuit, in these over 200 cases that have forced universities to endure a great deal of litigation expense and burden at a time that's already difficult for them, especially a public institution like Rhode Island. And for you to finally say what the Second Circuit, the Third Circuit, the D.C. Circuit, the Fifth Circuit said, some court might be able to say down the road, and that is that impossibility fully discharges the contract duties in these cases. And plaintiffs have not contested that it was impossible to follow Governor Raimondo's orders. And, Your Honor, every contract assumes that performance is not required if it would be illegal to perform. But I want to focus also on what the consequence of that is. It bars breach or damages. And I'd focus the court particularly on the Restatement of Contracts, Second, Section 261. District court cited Restatement of Contracts, Section 264, which is the special application of impossibility where a government regulation is what creates the impossibility, not lightning, but Governor Raimondo. But 264 is just an application of Restatement of Contracts, Section 261. And I want to read to you the crucial language from Section 261. We're in an event that's exogenous, makes performance impossible. And here's the key language. The duty to render performance is discharged, absent some provision in the contract. There can be no contract claim where there's impossibility. So, Your Honor, even if you disagreed with me, Judge Kayada, about whether the tuition unjust enrichment claim was preserved, as a matter of law, there can be no unjust. The impossibility also applies to tuition. And as a matter of law, the unjust enrichment claim founders for tuition for the same reason as for fees. And that is because there was no unjust enrichment. Two points. We did spend money on substitute services. That's undisputed. And Judge McConnell discusses that at length in Section 1A3 of the opinion, 2A3 of the opinion. And then we lost money. We did get some CARES Act aid, but we had unrecoverable additional expenses that we could never recover of $16 million. Plaintiffs had ample opportunity to try to they got our financials. They deposed our CFO. They had ample opportunity to show that you or I was unjustly enriched. They failed. They did not rebut. And as a matter of standard Rule 56 summary judgment practice, we prevail on unjust enrichment because we showed that plaintiffs had no evidence, an absence of evidence, to support an unjust enrichment claim. So, Your Honor, to summarize, we believe you should affirm the dismissal of the tuition contract claims because a student should reasonably expect a university to transition to an alternative when some exogenous event that was unforeseeable and beyond the university's control, just like Hurricane Katrina or a gas leak or the strike at Bayou Mon, you should affirm on those grounds. But alternatively, you should for the first time in any circuit affirm the dismissal and the summary judgment orders both on the grounds of impossibility and failure of the plaintiffs to meet their burden of showing that there was any unjust enrichment as a matter of law. And for that reason, we respectfully ask that you affirm on either of those grounds. Impossibility is a complete defense on all fees. And if you agree on impossibility, pages 41 to 47 of the addendum, you need not reach the arguments opposing counsel was having with Judge Salia before about the alternative ground for the fees ruling, which was there was no contract for access rather than support as to four fees and the quibble over whether the buses were running or not. You don't need to reach that because impossibility takes care of all six fees and not just the four that he ruled on on the other grounds. Let me ask you a question about impossibility, counsel. And if it boils down to us deciding that issue of impossibility, you mentioned this would be a new ruling under Rhode Island law, wouldn't this be something we should certify with the Rhode Island Supreme Court because it's such an important unprecedented issue then? May I answer, Your Honor? I've passed my time. Please. Your Honor, thank you for asking the question, but there's no need to do that here because you would only certify if there was a disagreement. And there is no disagreement here because plaintiffs have conceded impossibility. They've simply argued that if it's impossibility, they get unjust enrichment. But there, Rhode Island unjust enrichment law is completely clear, Your Honor. Judge McConnell cites de Grady v. Grady and other Rhode Island cases. It's settled. You need to be enriched. It needs to be unjust. And you can't be enriched if you spent far more, far from pocketing the money, as Judge McConnell put it. There's no pocketing here under Rhode Island law because we lost $16 million. We didn't gain anything from the pandemic. Your Honor, with respect, we think both impossibility is conceded and clear under Rhode Island law. Judge McConnell cites Rhode Island law. There's no dispute about its meaning. And Rhode Island law is also clear about unjust enrichment. And this record is absolutely clear that there is no dispute about whether URI was unjustly enriched. So respectfully, we ask that the Court affirm and allow the great flagship University of Rhode Island to go on without a remand to reach a foreordained conclusion that there were no reasonable expectations here, things were impossible as conceded, and there was no unjust enrichment. Please don't remand. Affirm. Thank you. Thank you. Thank you, Attorney Sullivan. Attorney Doolittle, you have a two-minute rebuttal. Please reintroduce yourself for the record. May it please the Court, Paul Doolittle on behalf of the appellates. I just wanted to briefly touch on the reasonable expectation, which was mentioned by counsel at the conclusion. The reasonable expectation that we're looking at in this context is what was the reasonable expectation of the university, what was the reasonable expectation of the students at the time of contract, not at the time of the pandemic, at the time of the contract. Because I didn't pay my tuition, the students didn't pay their tuition in March of 2020. They didn't pay it after the pandemic. They contracted, this contract was formed before the pandemic, and that was the time that the contract was formed. That's the expectations that has to be looked at, not at the reasonable time of during the pandemic, what would somebody reasonably do, but what was the reasonable expectations of the students and the university at the time. And I don't think there's any other thing than a reasonable expectation that the students were going to pay for an on-campus education and the university was going to provide one. What do you say to the argument that even if you have an unjust enrichment claim and preserved it and everything like that, when you got to the Rule 56 stage, you just didn't come up with the goods? In other words, you didn't produce evidence that would allow a fact finder to find that the university was unjustly enriched? I think there's evidence that a fact finder can, in fact, do that, and I think the judge in this lower court is— What evidence would you point us to now that would have allowed a fact finder to find an unjust enrichment given your burden? Simply, the tuition was paid, right? I paid my tuition, you took my tuition, and I got a product that was inferior. And you say that you spent more money on these things and other things and during the upgrade to be online, that we spent more money. That's only because you chose to go online. If you just shut the school down and said, come back when the COVID pandemic is over, we'll start to write back where you were, or we'll give you an extra semester if we try to do these things, that's entirely understandable. So there's no dispute that the university ended up worse off financially as a result of going online instead of being on campus? I think there's a dispute, yes. What evidence do you point us to that contradicts the evidence that they lost $16 million more than they otherwise would have? May I conclude? Yes, you may. Yes, sir. I think the record is replete with evidence of what they spent that money on, and they chose to spend that money on, those modality change. They didn't have to spend that money on the modality change. They could have simply said, we're stopping now, and provided the students the money. I'm saying, were they worse off? Pardon me? Were they worse off? Depending on the way that you look at it, but I think that's an analysis for the books and what the books show and what the books do not show, and how they… Did you present an expert that went through their books and said… There were no experts at that time on that point, Judge. Yes, sir. Thank you. Thank you very much. I appreciate your time. That concludes arguments in this case. All rise. This session of the Honorable United States Court of Appeals is now recessed until 9.30 tomorrow morning. The United States of America is an honorable court.